KERRY ELDER, on Behalf of Himself and All Others Similarly Situated, Plaintiff-Appellant, v. CORONET INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (6th Division) Nos. 1—89—0893, 1—89—1116 cons.

Opinion filed July 27, 1990.

Daniel A. Edelman, of Chicago, for appellant.

Beerman, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellees.

JUSTICE EGAN delivered the opinion of the court:

This case involves the propriety of an insurance company denying the claim of its insured based on the result of a polygraph examination. The plaintiff, Kerry Elder, filed a three-count complaint on behalf of himself and all others similarly situated against the defendants, Coronet Insurance Company (Coronet) and Elston Claim Service, Inc. (Elston). The first count alleged unfair practices in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121½, pars. 261 to 272) (Act or Consumer Fraud Act). The second count alleged that Coronet also committed a deceptive practice in violation of the Act. The third count alleged that Coronet breached its contract with the plaintiff. All three counts included substantially similar sections entitled "Class Action Allegations."

The judge dismissed count I on the ground that it did not allege an unfair practice under the Act; he dismissed count II on the ground that it did not allege a deceptive practice under the Act; he struck part of count III on the ground that it did not allege a basis for class action. He certified the following question as to count III under Supreme Court Rule 308 (107 Ill. 2d R. 308): "Whether count III, judged in light of the standards of a §2—615 motion to dismiss sufficiently alleges the prerequisites needed to maintain a class action under §2—801 of the Illinois Code of Civil Procedure?" We granted leave to appeal the Rule 308 order and consolidated that appeal with the Rule 304(a) appeal of the dismissal of counts I and II.

■ Because this appeal presents a question as to the sufficiency of the complaint, a review of the allegations of the complaint is appropriate. The factual allegations must be taken as true.

Effective July 9, 1987, Coronet issued an automobile insurance policy to the plaintiff, which covered, among other things, loss from theft. Coronet did not inform the plaintiff when he purchased the insurance of any policy or practice employed by Coronet regarding polygraph tests. On June 11, 1988, the plaintiff's car was stolen from a parking lot in Chicago, Illinois. The plaintiff had paid the premiums on the automobile insurance policy and had otherwise complied with the condi-

tions of the policy, and, thus, the insurance policy was in full force and effect. The plaintiff promptly reported the theft to the police and to Coronet and filed a claim for a theft loss with Coronet.

Elston, acting on Coronet's behalf, sent the plaintiff a letter asking him to take a polygraph test. The body of the letter stated in full as follows:

> "In order to speed up investigation and settlement of your claim, we request that you submit to a polygraph test.
>
> If you do not submit to a polygraph test, you will be required to appear and give a statement under oath, in the presence of a court reporter.
>
> Your cooperation is required under the terms of your policy.
>
> Please contact this office to set up an appointment as soon as possible.
>
> Your cooperation in this matter would be most appreciated and certainly helpful."

The defendants have a policy and practice of requesting insureds to submit to polygraph tests and denying claims based on the results of such tests, without significant other investigation. Polygraph tests, however, are not reliable.

Elston, on Coronet's behalf, denied the plaintiff's claim on the alleged basis of the results of the polygraph examination. The letter informing the plaintiff of this denial stated, in part, "We have tried to evaluate fairly and properly all the information and reports available to us about this accident. The results of our investigation indicate that the loss did not occur as you reported. We therefore regret that we will be unable to pay your claim." The defendants did not provide the plaintiff with any further information as to why the claim was denied. Despite the letter's indication to the contrary, the plaintiff alleged that "Elston and Coronet made no other significant effort besides the polygraph examination to determine what had happened to Elder's [automobile]." The defendants showed no interest in interviewing a witness, whom the plaintiff had produced, and who had contacted Elston. The authorities recovered the plaintiff's car in a stripped and seriously damaged condition, but Coronet continued to refuse to pay the plaintiff's claim.

In count I of the complaint, the plaintiff incorporated the above allegations and alleged that both Coronet and Elston engaged in unfair practices in violation of section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262). Section 2 states that

> "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pre-

tense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

The plaintiff alleged that each defendant committed an unfair practice that was contrary to public policy in denying insurance claims on the basis of polygraph test results. Moreover, the plaintiff alleged that denial of "a claim which is properly payable on its face [without] reliable, competent evidence that the claim is materially false or improper *** is unreasonable and vexatious *** [and forces] the insured to resort to the courts to collect his or her claim." Finally, the plaintiff asserted that the defendants engaged in this unfair practice in connection with the conduct of trade and commerce, thereby damaging the plaintiff.

The plaintiff sought to bring this unfair practice claim on behalf of the class of persons (1) who were insured by Coronet, (2) who made a claim on their policy, (3) who were requested to take a polygraph test, and (4) who were denied recovery on the basis of the polygraph test results. The plaintiff alleged that the class satisfied the numerosity requirement based on the defendants' use of form letters in processing the plaintiff's claim. The complaint alleged that common questions of law or fact predominated over individual questions, the principal issue being whether reliance on polygraph tests to deny insurance claims constitutes an unfair trade practice.

Based on the allegations in count I, the plaintiff requested the court to enter judgment in favor of the plaintiff and the class, as follows: declare the denial of insurance claims on the basis of polygraph tests to be an unfair trade practice; award compensatory and punitive damages, attorney fees, expenses and costs; and order such other and further relief as the court deemed appropriate.

In count II of the complaint, the plaintiff further alleged that Coronet also engaged in deceptive practices in violation of section 2 of the Consumer Fraud Act, the same section upon which count I is based. (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) The plaintiff asserted that Coronet committed a deceptive practice by selling the plaintiff an insurance policy without disclosing that the insurer has a policy and practice of denying claims on the basis of unreliable polygraph examinations.

The plaintiff also included in count II allegations to support a class action that were substantially similar to those in count I, except that the principal issue underlying count II's class-action allegations was

whether Coronet's failure to disclose its practice of denying claims on the basis of polygraph examinations constituted a deceptive trade practice. Count II also included a request for damages and other relief similar to those requested in count I.

Count III set forth a breach of contract claim alleging that Coronet breached its contract with the plaintiff in denying his claim and that Coronet acted unreasonably and vexatiously in relying on a polygraph test to deny his claim. Count III also included class allegations substantially similar to those in counts I and II. The complaint alleged that common questions of law and fact predominated under count III giving rise to the following principal issues: (1) whether the denial of an insurance claim solely on the basis of a polygraph test is a breach of the insurance policy; and (2) whether the denial of an insurance claim solely on the basis of a polygraph test is vexatious and unreasonable in violation of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 767). Except for the omission of a request for punitive damages, count III prayed for relief similar to that requested in counts I and II.

I

The plaintiff contends that the trial judge erroneously dismissed count I of the complaint against Coronet because Coronet's primary reliance on a polygraph test, an inherently unreliable test, constitutes an unfair practice under the Act.

■ Whether sole reliance on polygraph tests in denying insurance claims constitutes an unfair trade practice is a question of first impression in Illinois. In any event, Illinois courts have stated that the determination of whether a certain practice is "unfair" under the Act requires a case-by-case determination. *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 290, 430 N.E.2d 1012, 1018.

Section 2 of the Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262) states, in part, that "[i]n construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

■ Section 5(a) of the Federal Trade Commission Act (15 U.S.C. §45(a)(1) (1982)) (FTCA) states: "Unfair methods of competition in or affecting commerce, are declared unlawful." In interpreting section 5(a), the Supreme Court has set forth the criteria used to decide whether a practice is "unfair";

"The Commission has described the factors it considers in determining whether a practice that is neither in violation of the

antitrust laws nor deceptive is nonetheless unfair:

'(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of fairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *Federal Trade Comm'n v. Sperry & Hutchinson Co.* (1972), 405 U.S. 233, 244-45 n.5, 31 L. Ed. 2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5, quoting 29 Fed. Reg. 8355 (1964).

In *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924, the second district of this court adopted the criteria outlined in *Sperry & Hutchinson* in considering alleged violations of the Consumer Fraud Act. Although *Sperry & Hutchinson* concerned the elements of an "unfair" practice that was not also a "deceptive" practice, after analyzing these elements, the *Hedrich* court considered the defendant's failure to disclose an "unfair or deceptive practice" (*Hedrich*, 108 Ill. App. 3d at 90), thereby somewhat blurring the distinction between the two bases for liability. Nevertheless, an application of the *Sperry & Hutchinson* analysis to the present case reveals that count I of the plaintiff's complaint stated a cause of action for unfair trade practices against Coronet.

## A

■ Coronet's exclusive reliance on the results of a polygraph examination, "[although not] having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise." (*Sperry & Hutchinson*, 405 U.S. 233, 244 n.5, 31 L. Ed. 2d 170, 179 n.5, 92 S. Ct. 898, 905 n.5.) A public policy against such reliance is suggested by the statutory prohibition against requiring a party to submit to a polygraph test in a civil trial or a pretrial proceeding (Ill. Rev. Stat. 1987, ch. 110, par. 2—1104) and the similar prohibition against requiring, requesting or suggesting submission to a polygraph test by a criminal defendant (Ill. Rev. Stat. 1987, ch. 38, par. 155—11).

Coronet argues that its request that the plaintiff submit to a polygraph test offended no established public policy in effect at the time relevant to this case, citing legislation providing for the licensing and regulating of polygraph examiners. (Ill. Rev. Stat. 1987, ch. 111, par. 2401 *et seq.*) This legislation specifically prohibits polygraphic inquiry

into certain areas during preemployment or periodic employment examinations, such as inquiries into religious, racial, political, or sexual beliefs, but does not address, specifically or otherwise, inquiries in the insurance context. Thus, Coronet argues, "the articulated public policy of Illinois approves the request for a polygraph examination, and permits consideration of the results of a voluntary polygraph in the course of an insurance investigation." At this point it is important to note that Coronet treats as one two separate aspects of its argument: a *request* for a polygraph examination and the *use* of the results of the examination. Whether Coronet is empowered to request a polygraph examination is not the issue in this case. The issue is whether Coronet may use the results of that examination as a basis for denying a claim.

■ The defendant's argument misconstrues the licensing statute. Although conducting a polygraph test is not, in itself, an unlawful or criminal act, the mere existence of certain statutory licensing requirements does not constitute an "articulated public policy" justifying the *use* of polygraph test results in any context not specifically prohibited in that statute. The legislature specifically states in the licensing statute that "[t]he practice of the detection of deception in the State of Illinois is declared to affect the public health, safety and welfare and is subject to regulation and control in the public interest." Ill. Rev. Stat. 1987, ch. 111, par. 2402.

■ Following enactment of the licensing statute in 1963, Illinois courts, although recognizing certain beneficial uses of polygraph examinations, have not hesitated to restrict the use of polygraph test results when such use would affect the substantive rights of litigants. Judicial decisions have barred polygraph test results from criminal trials, even when the parties stipulate to admissibility (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070), from sentencing hearings in capital cases (*People v. Szabo* (1983), 94 Ill. 2d 327, 447 N.E.2d 193), from hearings on post-trial motions (*People v. Yarbrough* (1982), 93 Ill. 2d 421, 444 N.E.2d 493), from post-conviction proceedings (*People v. Hilliard* (1982), 109 Ill. App. 3d 797, 441 N.E.2d 135), and from administrative proceedings (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 450 N.E.2d 314).

In *Kaske*, the court agreed that "a polygraph examination is an instrument of some investigatory utility and value" (96 Ill. 2d at 310), but, nevertheless, determined that such test results were not admissible in an administrative proceeding before the board of police and fire commissioners. The court stated:

> "There is a real danger that the board of fire and police commissioners will find the results of the polygraph examination *com-*

*pletely determinative* of guilt or innocence. \*\*\* [P]olygraph evidence is not reliable enough to be used as substantive evidence in an administrative proceeding before the board. The findings before a board of fire and police commissioners must be based upon facts proved by competent evidence." (Emphasis added.) (96 Ill. 2d at 309.)

Thus, the public policy of the State as established by case law allows for the investigatory *use* of consensual polygraph examinations, in certain circumstances, but rejects *reliance* on such examinations in decision making.

■ The plaintiff has alleged that Coronet "denied [the plaintiff's] claim on the alleged basis of the results of the polygraph test" and that "Coronet made no other significant effort besides the polygraph examination to determine what had happened to [the plaintiff's car]." Those allegations are admitted by Coronet. Thus, Coronet's actions, as alleged in the complaint, embody the dangers foreseen by the *Kaske* court: reliance by a decision maker on the results of a polygraph examination. The State, all agree, has an extensive interest in the practices of insurance companies. This practice, in our judgment, offends the public policy of the State.

Finally, other indicators of a public policy against reliance on polygraphs to determine insurance claims include the Federal Employee Polygraph Protection Act of 1988 (29 U.S.C.A. §2001 *et seq.* (1990 Supp.)), which makes it unlawful for any employer engaged in or affecting interstate commerce "to require, request, suggest, or cause any employee or prospective employee to take or submit to any lie detector test," and regulations promulgated by the Illinois Department of Insurance. See 50 Ill. Adm. Code §919.60(d) (1985) (preventing an insurer from *requiring* an insured to submit to a polygraph as a condition precedent to payment of a claim); 50 Ill. Adm. Code §919.60(d) (1985), as amended at 13 Ill. Reg. 1204, 1217 (eff. Jan. 11, 1989) (preventing an insurer from *requesting or requiring* an insured to submit to a polygraph examination).

Although we have already expressed the view that Coronet's right to request a polygraph examination is not the issue, we deem it appropriate to address the question in view of subsequent litigation involving the Director of Insurance.

■ Coronet points out that the insurance regulation in effect at the time relevant to the plaintiff's complaint prohibited an insurer only from requiring an insured to submit to a polygraph (50 Ill. Adm. Code §919.60 (1985)) and that the recently promulgated version of the regulation which prohibits both the requiring and the requesting of poly-

graph examinations was not effective when Coronet asked the plaintiff to submit to an examination. However, the fact that the insurance regulations in effect at the time did not expressly prohibit Coronet from requesting a polygraph examination is not relevant insofar as a practice can be unfair "without necessarily having been previously considered unlawful." *Sperry & Hutchinson*, 405 U.S. at 244 n.5, 31 L. Ed. 2d at 179 n.5, 92 S. Ct. at 905 n.5.

■■ After oral argument was heard in this case, the second division of this court reversed the circuit court's injunction order (*Coronet Insurance Co. v. Washburn* (1990), 201 Ill. App. 3d 633) and upheld the determination of the Director of Insurance that an insurer's request of an insured to submit to a polygraph examination was an improper claims practice.

## B

■■ Coronet's alleged exclusive reliance on polygraph test results is oppressive under the second prong of the *Sperry & Hutchinson* analysis in that Coronet forces its insureds to file suit or to forego recovery although Coronet possesses no admissible evidence that would create a triable issue in court. Coronet counters that, although polygraph results are not admissible substantively, they are admissible to show an insurer's good faith in denying a claim, citing *Moskos v. National Ben Franklin Insurance Co.* (1978), 60 Ill. App. 3d 130, 376 N.E.2d 388. *Moskos* may be authority for admissibility of the polygraph results in the plaintiff's claim under count III for vexatious refusal to pay. But the evidence is not admissible, let alone conclusive, in the claims under counts I and II. (See *Lynch v. Mid-America Fire & Marine Insurance Co.* (1981), 94 Ill. App. 3d 21, 418 N.E.2d 421.) Moreover, even if the evidence is admissible under the vexatious-refusal-to-pay claim in count III (and we have strong reservations about the holding in *Moskos*), the evidence is just that—admissible; it is not conclusive.

## C

The plaintiff also argues correctly that Coronet's reliance on polygraph test results causes substantial injury to consumers. This injury results from the limited choices facing the insured: file suit or forego redress. The plaintiff asserts, without contradiction by Coronet, that many claimants are deprived of redress because of the modest size of the claims and the unsophistication of Coronet's insureds.

■■ Coronet contends that the plaintiff's complaint failed to state a cause of action because the plaintiff consented to take the polygraph

examination rather than give a sworn statement. The defendants assert that the plaintiff "admitted the consent form, stating that he voluntarily took the test and consented to disclosure of the results." The basis of that statement is a consent form allegedly signed by the plaintiff which was made part of the record as a response to a request to admit. The plaintiff makes no point of the propriety of our considering the form even though the motion was brought under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Consequently, neither will we.

However, we must again point out that the issue is the use of the results of the polygraph examination in denying a claim. The issue is not whether the plaintiff consented to take the test and consented to the disclosure of the results. He did not consent to a denial of his claim based on the results of the test.

In sum, the plaintiff has alleged the elements necessary under *Sperry & Hutchinson* and *Hedrich* to state a cause of action for unfair trade practices against Coronet. Moreover, even if the plaintiff did consent to submit to the examination, such consent is irrelevant to his claim of unfair trade practices. For these reasons, the trial judge erred in dismissing count I of the plaintiff's complaint against Coronet. The order dismissing count I is reversed.

## II

The plaintiff also argues that count I of his complaint sufficiently stated a cause of action against Elston for unfair trade practices under the Consumer Fraud Act. The plaintiff anchors his argument on Elston's actions, as agent for Coronet, in denying the plaintiff's automobile-theft claim based solely on the results of the polygraph examination. Elston asserts that the complaint failed to state a cause of action against it for any unfair practice because the Act does not apply to the processing of insurance claims, because the plaintiff lacks standing as a "consumer" as to Elston, and because Elston's tangential relationship to any consumer transaction between the plaintiff and Coronet provides an insufficient nexus to support a cause of action against Elston.

The plaintiff complains of Elston's actions as Coronet's agent in denying his automobile-theft claim. Because those actions alleged in count I sufficiently stated a cause of action against Coronet, as indicated above, the propriety of the dismissal of Elston depends on the validity of Elston's arguments against imposing liability under the Consumer Fraud Act for claim-processing activities. The resolution of this issue requires an examination of the statute governing an unfair

practice claim.

■■■ ■ Section 10a of the Consumer Fraud Act (Ill. Rev. Stat. 1987, ch. 121½, par. 270a (as amended by Pub. Act 85—869, §1, eff. Jan. 1, 1988)) provides the basis for a private right of action as follows:

"Any person who suffers damage as a result of a violation of Section[ ] 2 *** of this Act committed by any other person may bring an action against such person. The court, in its discretion[,] may award actual damages or any other relief which the court deems proper."

Section 2 of the Act (Ill. Rev. Stat. 1987, ch. 121½, par. 262) declares unlawful "unfair *** practices *** in the conduct of any trade or commerce." Section 1 of the Act (Ill. Rev. Stat. 1987, ch. 121½, par. 261) defines "trade" and "commerce" to include the "sale[] or distribution of any services." Finally, section 11a (Ill. Rev. Stat. 1987, ch. 121½, par. 271a) states that "[t]his Act shall be liberally construed to effect the purposes thereof."

■■■ Thus, the plain language of the Act establishes that any person who suffers damage as a result of any other person's unfair practice or deception in the sale or distribution of any services may bring an action for actual damages or for any other relief which the court deems proper. This statutory language is extremely broad, and the supreme court has stated that "[t]his broad language evidences an intent that the Act have a correspondingly broad applicability." *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 284, 430 N.E.2d 1012, 1015.

In opposition to a reading of the Act that would include Elston's activities in the Act's coverage, the defendants cite *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 438 N.E.2d 1247, and *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007. These cases are distinguishable. The court in *Exchange National Bank* held that the plaintiffs failed to state a cause of action against the defendant mortgage lenders under the Act, because the plaintiffs failed to allege that the assertedly unfair and deceptive practices were "part of a pattern of defendants' lending activities." (108 Ill. App. 3d at 216.) In contrast, the plaintiff here has alleged that "Elston and Coronet have a *policy and practice* of denying claims on the basis of results of polygraph *** tests, without engaging in significant other investigation." (Emphasis added.)

In *Frahm* the court held that the plaintiffs failed to state a cause of action against their former attorney under the Act, because attorney services were not services provided in the conduct of any trade or commerce. The court found that "[t]he interpretation urged by plain-

tiffs *** would necessarily equate the practice of law with an ordinary commercial enterprise, a proposition [with] no support in case law or public policy." (113 Ill. App. 3d at 584.) In contrast, the sale of insurance is a "trade or commerce" under the Act. *Fox v. Industrial Casualty Insurance Co.* (1981), 98 Ill. App. 3d 543, 546, 424 N.E.2d 839, 842.

Although the decision is not binding precedent, we find persuasive the holding of the Federal district court in *Barr Co. v. Safeco Insurance Co.* (N.D. Ill. 1984), 583 F. Supp. 248. The court held that the plaintiff had stated a cause of action against the defendant insurer, who allegedly "engaged in a practice of not paying promptly and completely claims *** which Safeco knew were due and owing" in an effort to negotiate settlements at less than a full and fair value and who "concealed and omitted to disclose its practice." (583 F. Supp. at 257.) The court reasoned that the "plaintiff alleges a series of misrepresentations made to a series of insureds. Plaintiff is not alleging an isolated incident. In any event, insurance contracts are matters of public policy [citations] and misrepresentations made with regard to such contracts would be the type covered by the Act." (583 F. Supp. at 258.) Likewise, the plaintiff here has alleged a series of unfair acts by Elston and Coronet against the plaintiff and other insureds. Elston and Coronet are incorrect in asserting that the processing of insurance claims is not covered by the Act.

The defendants cite *McCarter v. State Farm Mutual Automobile Insurance Co.* (1985), 130 Ill. App. 3d 97, 473 N.E.2d 1015, as "specifically [holding] that the Act was not intended to reach the insurance claim adjustment process." However, *McCarter* concerned an allegation that the defendant-insurer committed an unfair or deceptive act in settling the plaintiff-beneficiary's third-party claim against an insured. In affirming the dismissal of the plaintiff's Consumer Fraud Act claim, the court reasoned that "the transaction complained of in the present case does not involve a sale of insurance. In fact, the plaintiff is not even a consumer under these circumstances. Since the Consumer Fraud Act applies only to consumers [citation], we affirm the trial court's dismissal of count I." (130 Ill. App. 3d at 101.) The *McCarter* plaintiff was a third-party beneficiary under an insured's policy, not a consumer (*i.e.*, an insured who had purchased insurance). *McCarter* does not hold that the Act was not intended to reach the insurance claim adjustment process where the claimant is the insured. The same reasoning distinguishes *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328, 371 N.E.2d 634, 638, in which the supreme court held that the plaintiff, who did not purchase or contract to purchase any-

thing, but merely applied for admission to medical school, was not a "consumer" under the Act.

Moreover, as indicated above, section 10a of the Act (Ill. Rev. Stat. 1987, ch. 121½, par. 270a) establishes a broad standard for standing to bring a private cause of action: to bring an action against any person who commits an unfair practice in violation of section 2 of the Act, a plaintiff need only "suffer[] damage as a result of [that] violation." (Ill. Rev. Stat. 1987, ch. 121½, par. 270a.) A consumer is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." (Ill. Rev. Stat. 1987, ch. 121½, par. 261(e).) Nowhere does the definition require that privity exist between the purchaser and the provider of the merchandise. The present plaintiff purchased insurance from Coronet and contracted for a good-faith settlement of claims. Thus, the plaintiff is a consumer under the Act and has standing under section 10a to bring an action against Elston for damage suffered as a result of Elston's allegedly unfair practices in adjusting the plaintiff's claim.

Finally, section 10a provides that a plaintiff may bring an action against any "person" who violates section 2 of the Act. "The term 'person' includes any natural person or his legal representative, partnership, corporation (domestic or foreign), company, trust, business entity or association, and *any agent [or] employee \*\*\* thereof.*" (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 121½, par. 261(c).) The plaintiff has alleged that "Elston, *acting on behalf of Coronet*, denied [the plaintiff's] claim on the alleged basis of the results of the polygraph test." (Emphasis added.) Thus, the plaintiff properly stated a cause of action against Elston, who was Coronet's agent and a "person" who performed the allegedly unfair acts.

### III

Plaintiff next asserts as error the trial judge's dismissal of count II of the complaint, which alleged that Coronet engaged in a deceptive practice by failing, when it sold the insurance policy, to disclose its practice of denying automobile-theft claims on the basis of polygraph examinations. Section 2 of the Act provides a nonexclusive list of deceptive practices, which includes "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) To establish a deceptive practice claim, a plaintiff "must show (1) a deceptive act or practice, (2) an intent by defendants that he rely on the deception, and (3) the deception

occurred in the course of conduct involving a trade or commerce." (*Crowder v. Bob Oberling Enterprises, Inc.* (1986), 148 Ill. App. 3d 313, 316, 499 N.E.2d 115, 117.) Moreover, in affirmative misrepresentation or omission cases under the Act, a plaintiff "must allege the misrepresentation of a material fact." *Heastie v. Community Bank* (N.D. Ill. 1988), 690 F. Supp. 716, 718-19.

■■ Courts have employed various standards to determine what constitutes a "deceptive act or practice," the first element set forth in *Crowder*. Some courts have applied the unfair practice standard enunciated in *Sperry & Hutchinson*, previously discussed. (*E.g., People ex rel. Hartigan v. All American Aluminum & Construction Co.* (1988), 171 Ill. App. 3d 27, 524 N.E.2d 1067; *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924.) This court has recognized that, under section 5(a) of the FTCA, "an advertisement has been held to be deceptive on its face if it creates 'the likelihood of deception or [has] the capacity to deceive'." (*Williams v. Bruno Appliance & Furniture Mart, Inc.* (1978), 62 Ill. App. 3d 219, 222, 379 N.E.2d 52, 54, quoting *Montgomery Ward & Co. v. Federal Trade Comm'n* (7th Cir. 1967), 379 F.2d 666, 670.) In *Crowder* the court held that allegations that the defendant car salesman failed to inform the plaintiff of a used car's salvage history sufficiently alleged deceptive conduct, stating that "[u]nder the Act the omission of any material fact is deceptive conduct." 148 Ill. App. 3d at 316-17.

■■ Under *Crowder*'s standard, the plaintiff's assertion that Coronet failed to disclose its claims adjustment practices sufficiently alleged a deceptive act or practice. "A misrepresentation is material if 'it relates to a matter upon which the plaintiff could be expected to rely in determining to engage in the conduct in question.' " (*Heastie,* 690 F. Supp. at 718-19, quoting *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 49, 390 N.E.2d 393, 404.) In making a judgment whether to purchase insurance from Coronet, the plaintiff could reasonably have been expected to rely on the information that Coronet engaged in a practice of denying insurance claims on the basis of polygraph tests without significant other investigation. Common sense dictates that any prospective purchaser of insurance would be less likely to purchase insurance from a carrier that, as a matter of policy and general practice, would hire a polygraph operator to examine a claimant and justifiably deny the claim because the polygraph operator, paid by the carrier, opined that the insured had not told the truth. Consequently, the undisclosed practice was material, and Coronet's alleged failure to disclose constituted deceptive conduct. Compare *Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d

294, 300, 468 N.E.2d 1251, 1255 (The court affirmed summary judg-ment for the defendant on a Consumer Fraud Act claim, stating that "there [was] no element of deception in the dealings between [the] par-ties *** [because] defendant provided plaintiff with a complete expla-nation pamphlet *** [which] eliminate[d] any possibility of confusion or misunderstanding").

██ ██ The second element required under *Crowder* for a decep-tive-practice claim concerns the defendant's intent that the plaintiff rely on the deception. However,

> "a defendant need not be motivated by an intent to deceive. [Ci-tation.] *** [A] violator's good or bad faith is not important. [Ci-tation.] Even innocent misrepresentations may be actionable. [Citation.] By its own terms, the statute requires only that a vio-lator intend for a purchaser to *rely* on his acts or omissions. A party is considered to intend the necessary consequences of his own acts or conduct." (Emphasis in original.) (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 566, 491 N.E.2d 464, 474.)

Thus, Coronet is considered to have intended that the plaintiff pur-chase its automobile-theft insurance under the belief that Coronet would not refuse to pay otherwise facially valid claims simply on the basis of polygraph test results. Contrary to the assertions of the defendants, the plaintiff had no duty to inquire as to the insurer's claims processing method. (*Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627-28, 413 N.E.2d 448, 452 ("[N]either the mental state of the person making a misrepresentation nor the diligence of the party injured to check as to the accuracy of the misrepresentation [is] material to the existence of a cause of action for that misrepresentation under section 2 [of the Act].").) The plaintiff's claim thus established the requisite intent.

██ The final element to a deception claim under *Crowder* re-quires that the deception occurred in the course of conduct involving a trade or commerce. We repeat that the sale of insurance is a trade or commerce under the Act. (*Fox v. Industrial Casualty Insurance Co.* (1981), 98 Ill. App. 3d 543, 424 N.E.2d 839.) Thus, the plaintiff's claim for deceptive practices has satisfied the third element as well.

The defendants rely heavily on *Marcial v. Coronet Insurance Co.* (N.D. Ill. 1988), 122 F.R.D. 529, *aff'd* (7th Cir. 1989), 880 F.2d 954. *Marcial* does not support the defendants' position. There, the district court denied class certification of a claim against Coronet which al-leged that Coronet and Elston violated the Federal RICO statutes (18 U.S.C. §§1961 through 1965 (1982)) by using polygraph tests as a means for denying insurance claims. Essential to the complaint was

proof that the defendants had committed wire or mail fraud. In affirming, the court of appeals held that the plaintiffs had to prove that the defendants "knowingly schemed to defraud plaintiffs of their property and used the mail or wire services in furtherance of the scheme" (880 F.2d at 958) and that the plaintiffs had failed to so prove. As we have already expressed, an intent to deceive is not an element to be proved under the Consumer Fraud Act. Significantly, the court noted that the "plaintiffs have presented strong arguments as to why the use of a polygraph test is unfair, and possibly illegal under state law." 880 F.2d at 958.

As the plaintiff's claim for deceptive practices has alleged satisfactorily the requisite elements for such a claim, the order dismissing count II of the complaint is reversed.

## IV

The plaintiff's last contention is that the judge erred in dismissing his class claim from count III. Count III alleges that Coronet breached its contract of insurance by refusing to pay the plaintiff's claim on the basis of a lie detector test, that Elder was damaged by the breach, and that it is unreasonable and vexatious for an insurer to deny claims on the basis of lie detector results. The count further alleged that the class consists of all persons who satisfy the following criteria: (a) they were insured by Coronet; (b) they made a claim under their policy; (c) they were requested to take a polygraph or "lie detector" test; and (d) their claim was denied on the basis of the results of the polygraph or "lie detector" test.

The plaintiff contended that there were questions of law and fact common to the class which predominated over any questions affecting only individual members. He identified the issues as: (a) whether the denial of an insurance claim on the basis of a lie detector test is a breach of the insurance policy; and (b) whether the denial of an insurance claim on the basis of a lie detector test is vexatious and unreasonable in violation of the Insurance Code. The relief prayed for was a declaration "that it is an unfair trade practice to deny insurance claims on the basis of lie detector tests and for appropriate compensatory damages and for costs of suit, including the additional amounts prescribed by section 157 [sic] of the insurance code and for such other and further relief as the Court deems appropriate." (The plaintiff must have been referring to section 155 of the Code. (Ill. Rev. Stat. 1987, ch. 73, par. 767.) Section 157 is not applicable.)

Section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—801) establishes the elements necessary to main-

tain a class action:

> "An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

The defendants claim that class certification was properly denied because the trial judge found that many issues would still be unresolved even if the judge eventually held that the defendants had breached the contract with the plaintiff. We agree. Under count III, the plaintiff must prove that his car was stolen and the amount of his damages. Every other member of the class must prove the same. The defendants would be entitled to a jury trial on the claims of the plaintiff and all the other members of the class. Similarly, the plaintiff must convince the court that the refusal to pay was vexatious; so must every other member of the class. It is true that there is one question of fact common to the class—all claims were denied on the basis of the results of polygraph examinations. But we do not believe that that common question predominates over any other questions affecting only individual members to the extent that substantial differences between the individual claimants do not exist. On this aspect of the case we believe *Marcial v. Coronet Insurance Co.* (7th Cir. 1989), 880 F.2d 954, is persuasive.

■■■ ■ The decision whether to certify a class is a matter committed to the sound discretion of the trial court and will be reversed only upon a clear abuse of discretion or the application of impermissible legal criteria. (*Schlenz v. Castle* (1981), 84 Ill. 2d 196, 417 N.E.2d 1336.) A reversal of a trial court's decision whether to certify a class action is not justified simply because a reviewing court concludes that the trial court's discretion was not "wisely exercised." (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565.) We cannot say that the trial judge in this case abused his discretion in denying certification under the pleading before him.

The plaintiff has shifted positions from the relief sought in his complaint in what we judge to be an attempt to avoid the argument that

the other issues must be resolved. He tells us that he asked the trial court for "a declaration that the denial of insurance claims on the basis of lie detector tests was unlawful, and to direct defendants to reprocess of all claims denied on the basis of 'lie detector' tests without use of such tests." He bases that request on the catch-all part of his prayer which asks "for such other and further relief that the court deems appropriate." In our view the relief he now requests may not be based on count III. Reprocessing of all claims is inconsistent with a claim for breach of contract and compensatory damages. Since this case is being remanded, the plaintiff may wish to amend his complaint.

The plaintiff relies principally on *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 365 N.E.2d 638, and *Carrao v. Health Care Service Corp.* (1983), 118 Ill. App. 3d 417, 454 N.E.2d 781. In *Van Vactor*, which involved a complaint for declaratory judgment, the court expressly noted that, unlike this case, there was no claim for damages. In *Carrao*, the court held that a presumption existed that a physician had made a determination of medical necessity in hospitalizing a patient in good faith. The court further held that if the defendant, Blue Cross, was able to produce "clear and convincing evidence" of fraud, duress or bad faith in any of the claims, the court would deal appropriately with each claim. The trial court, we judge, concluded that the number of such instances of bad faith would be small. The *Carrao* court also noted pointedly that the "trial court was well within its discretion in determining that the issue of contract construction predominated over any questions affecting only individual members." (118 Ill. App. 3d at 428.) *Van Vactor* also was an affirmance of the trial court's exercise of discretion. Neither case is such authority that compels the substitution of our judgment for that of the trial judge. Therefore, we answer in the negative the certified question whether count III sufficiently alleged the prerequisites needed to maintain a class action under section 2—801 of the Code of Civil Procedure. The trial judge properly struck that part of count III purporting to plead a cause of action under section 2—801. The order striking that part of count III is affirmed.

Judgment affirmed in part; reversed in part and remanded.

LaPORTA, P.J., and McNAMARA, J., concur.