PATRICK E. DWYER, Indiv. and on Behalf of All Others Similarly Situated, *et al.*, Plaintiffs-Appellants, v. AMERICAN EXPRESS COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—92—3944

Opinion filed June 30, 1995.

Krislov & Associates, Ltd. (Clinton A. Krislov and Jonathan Nachsin, of counsel), Lowrey & Smerz, Ltd. (John J. Lowrey, of counsel), Edelman & Combs (Daniel A. Edelman and Cathleen M. Combs, of counsel), Walner & Associates, Ltd. (Lawrence Walner, of counsel), Donald A. Statland, and Richard S. Cohan, all of Chicago, for appellants.

Grippo & Elden, of Chicago (Charles S. Bergen, George R. Dougherty, and Michael D. Smith, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs, American Express cardholders, appeal the circuit court's dismissal of their claims for invasion of privacy and consumer fraud against defendants, American Express Company, American Express Credit Corporation, and American Express Travel Related Services Company, for their practice of renting information regarding cardholder spending habits.

On May 13, 1992, the New York Attorney General released a press statement describing an agreement it had entered into with defendants. The following day, newspapers reported defendants' actions which gave rise to this agreement. According to the news articles, defendants categorize and rank their cardholders into six tiers based on spending habits and then rent this information to participating merchants as part of a targeted joint-marketing and

sales program. For example, a cardholder may be characterized as "Rodeo Drive Chic" or "Value Oriented." In order to characterize its cardholders, defendants analyze where they shop and how much they spend, and also consider behavioral characteristics and spending histories. Defendants then offer to create a list of cardholders who would most likely shop in a particular store and rent that list to the merchant.

Defendants also offer to create lists which target cardholders who purchase specific types of items, such as fine jewelry. The merchants using the defendants' service can also target shoppers in categories such as mail-order apparel buyers, home-improvement shoppers, electronics shoppers, luxury lodgers, card members with children, skiers, frequent business travelers, resort users, Asian/European travelers, luxury European car owners, or recent movers. Finally, defendants offer joint-marketing ventures to merchants who generate substantial sales through the American Express card. Defendants mail special promotions devised by the merchants to their cardholders and share the profits generated by these advertisements.

On May 14, 1992, Patrick E. Dwyer filed a class action against defendants. His complaint alleges that defendants intruded into their cardholders' seclusion, commercially appropriated their cardholders' personal spending habits, and violated the Illinois consumer fraud statute and consumer fraud statutes in other jurisdictions. Maria Teresa Rojas later filed a class action containing the same claims. The circuit court consolidated the two actions. Plaintiffs moved to certify the class, add parties, and file an amended, consolidated complaint. Defendants moved to dismiss the claims. The parties fully briefed the motions to dismiss and to certify the class. After hearing argument on the motion to dismiss, the circuit court granted that motion and denied plaintiffs' motions as moot. Plaintiffs appeal the circuit court order.

Plaintiffs have alleged that defendants' practices constitute an invasion of their privacy and violate the Illinois Consumer Fraud and Deceptive Business Practices Act (Act or Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121$^{1}/_{2}$, par. 261 *et seq.* (now 815 ILCS 505/1 *et seq.* (West 1992))). For the reasons discussed below, we find that plaintiffs have not stated a cause of action under either of these theories.

## INVASION OF PRIVACY

■ There are four branches of the privacy invasion tort identified by the Restatement (Second) of Torts. These are: (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of

another's name or likeness; (3) a public disclosure of private facts; and (4) publicity which reasonably places another in a false light before the public. (Restatement (Second) of Torts §§ 652B, 652C, 652D, 652E, at 378-94 (1977); W. Keeton, Prosser & Keeton on Torts § 117, at 849-69 (5th ed. 1984).) Plaintiffs' complaint includes claims under the first and second branches.

As a preliminary matter, we note that a cause of action for intrusion into seclusion has never been recognized explicitly by the Illinois Supreme Court. In *Lovgren v. Citizens First National Bank* (1989), 126 Ill. 2d 411, 534 N.E.2d 987, the supreme court discussed this tort as enunciated by the Restatement and Prosser, but stated that its discussion did not imply a recognition of the action by the court. (*Lovgren*, 126 Ill. 2d at 416-17, 534 N.E.2d at 988-89.) The court concluded that the defendants' alleged actions in that case did not constitute an unreasonable intrusion into the seclusion of another and declined to address the conflict among the appellate court districts as to whether the cause of action should be recognized in this State.[1] *Lovgren*, 126 Ill. 2d at 417, 534 N.E.2d at 989.

In 1979, this district declined to entertain a cause of action for intrusion into the seclusion of another in *Kelly v. Franco* (1979), 72 Ill. App. 3d 642, 391 N.E.2d 54. In *Kelly*, the plaintiffs contended that the defendant repeatedly made phone calls to their home, only to hang up when one of the plaintiffs answered. The plaintiffs also alleged that the defendant verbally threatened and abused them and harassed their son. (*Kelly*, 72 Ill. App. 3d at 644, 391 N.E.2d at 56.) This court noted that the law in Illinois was inconsistent on this matter and held that even if it were to recognize such a cause of action the plaintiff's allegations were insufficient to support a cause of action for unreasonable intrusion into another's seclusion. *Kelly*, 72 Ill. App. 3d at 646-47, 391 N.E.2d at 58.

■ The third district recognized the intrusion tort in *Melvin v. Burling* (1986), 141 Ill. App. 3d 786, 490 N.E.2d 1011, seven years after *Kelly*. In *Melvin*, the court set out four elements which must be alleged in order to state a cause of action: (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion which is offensive or objectionable to a reasonable man; (3) the matter upon

---

[1]At that time, the cause of action had been recognized by the fifth district in *Bank of Indiana v. Tremunde* (1977), 50 Ill. App. 3d 480, 365 N.E.2d 295, and the third district in *Melvin v. Burling* (1986), 141 Ill. App. 3d 786, 490 N.E.2d 1011. The first and fourth districts had held that the cause of action was not recognized in Illinois. See *Kelly v. Franco* (1979), 72 Ill. App. 3d 642, 391 N.E.2d 54; *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37.

which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering. (*Melvin*, 141 Ill. App. 3d at 789, 490 N.E.2d at 1013-14.) Since the third district set out the four elements in *Melvin*, this district has applied these elements without directly addressing the issue of whether the cause of action exists in this State. In *Mucklow v. John Marshall Law School* (1988), 176 Ill. App. 3d 886, 531 N.E.2d 941, and again in *Miller v. Motorola, Inc.* (1990), 202 Ill. App. 3d 976, 560 N.E.2d 900, this district held that the plaintiff's allegations did not satisfy the first element of *Melvin*, without expressing a view as to the conflict regarding the recognition of the cause of action. *Mucklow*, 176 Ill. App. 3d at 894, 531 N.E.2d at 946; *Miller*, 202 Ill. App. 3d at 981-82, 560 N.E.2d at 904.

Plaintiffs' allegations fail to satisfy the first element, an unauthorized intrusion or prying into the plaintiffs' seclusion. The alleged wrongful actions involve the defendants' practice of renting lists that they have compiled from information contained in their own records. By using the American Express card, a cardholder is voluntarily, and necessarily, giving information to defendants that, if analyzed, will reveal a cardholder's spending habits and shopping preferences. We cannot hold that a defendant has committed an unauthorized intrusion by compiling the information voluntarily given to it and then renting its compilation.

Plaintiffs claim that because defendants rented lists based on this compiled information, this case involves the disclosure of private financial information and most closely resembles cases involving intrusion into private financial dealings, such as bank account transactions. Plaintiffs cite several cases in which courts have recognized the right to privacy surrounding financial transactions. See *Zimmermann v. Wilson* (3d Cir. 1936), 81 F.2d 847 (holding examination of information in taxpayers' bank books would violate the taxpayers' privacy rights); *Brex v. Smith* (1929), 104 N.J. Eq. 386, 146 A. 34 (upholding claim for unauthorized intrusion into the plaintiff's bank account); *Hickson v. Home Federal* (N.D. Ga. 1992), 805 F. Supp. 1567 (finding bank disclosure to credit bureau of borrower's loan payment delinquency could violate borrower's right to privacy); *Suburban Trust Co. v. Waller* (1979), 44 Md. App. 335, 408 A.2d 758 (holding bank cannot reveal information about customers' account or transaction unless compelled by legal process); *Mason v. Williams Discount Center, Inc.* (Mo. 1982), 639 S.W.2d 836 (finding store's posting of names of bad check risks invades plaintiff's privacy).

However, we find that this case more closely resembles the sale of magazine subscription lists, which was at issue in *Shibley v. Time, Inc.* (1975), 45 Ohio App. 2d 69, 341 N.E.2d 337. In *Shibley*, the

plaintiffs claimed that the defendant's practice of selling and renting magazine subscription lists without the subscribers' prior consent "constitut[ed] an invasion of privacy because it amount[ed] to a sale of individual 'personality profiles,' which subjects the subscribers to solicitations from direct mail advertisers." (*Shibley*, 45 Ohio App. 2d at ____, 341 N.E.2d at 339.) The plaintiffs also claimed that the lists amounted to a tortious appropriation of their names and "personality profiles." The trial court dismissed the plaintiffs' complaint and the court of appeals of Ohio affirmed. *Shibley*, 45 Ohio App. 2d at ____, 341 N.E.2d at 339.

The *Shibley* court found that an Ohio statute, which permitted the sale of names and addresses of registrants of motor vehicles, indicated that the defendant's activity was not an invasion of privacy. The court considered a Federal district court case from New York, *Lamont v. Commissioner of Motor Vehicles* (S.D.N.Y. 1967), 269 F. Supp. 880, *aff'd* (2d Cir. 1967), 386 F.2d 449, *cert. denied* (1968), 391 U.S. 915, 20 L. Ed. 2d 654, 88 S. Ct. 1811, to be insightful. In *Lamont*, the plaintiff claimed an invasion of privacy arising from the State's sale of its list of names and addresses of registered motor-vehicle owners to mail-order advertisers. The *Lamont* court held that however "noxious" advertising by mail might be, the burden was acceptable as far as the Constitution is concerned. (*Lamont*, 269 F. Supp. at 883.) The *Shibley* court followed the reasoning in *Lamont* and held:

> "The right to privacy does not extend to the mailbox and therefore it is constitutionally permissible to sell subscription lists to direct mail advertisers. It necessarily follows that the practice complained of here does not constitute an invasion of privacy even if appellants' unsupported assertion that this amounts to the sale of 'personality profiles' is taken as true because these profiles are only used to determine what type of advertisement is to be sent." *Shibley*, 45 Ohio App. 2d at ____, 341 N.E.2d at 339-40.

Defendants rent names and addresses after they create a list of cardholders who have certain shopping tendencies; they are not disclosing financial information about particular cardholders. These lists are being used solely for the purpose of determining what type of advertising should be sent to whom. We also note that the Illinois Vehicle Code authorizes the Secretary of State to sell lists of names and addresses of licensed drivers and registered motor-vehicle owners. (625 ILCS 5/2—123 (West 1992).) Thus, we hold that the alleged actions here do not constitute an unreasonable intrusion into the seclusion of another. We so hold without expressing a view as to the appellate court conflict regarding the recognition of this cause of action.

■ Considering plaintiffs' appropriation claim, the elements of the tort are: an appropriation, without consent, of one's name or likeness for another's use or benefit. (Restatement (Second) of Torts § 652C (1977); *Leopold v. Levin* (1970), 45 Ill. 2d 434, 444, 259 N.E.2d 250, 256.) This branch of the privacy doctrine is designed to protect a person from having his name or image used for commercial purposes without consent. (See *Douglass v. Hustler Magazine* (7th Cir. 1985), 769 F.2d 1128, *cert. denied* (1986), 475 U.S. 1094, 89 L. Ed. 2d 892, 106 S. Ct. 1489 (finding defendant appropriated the value of a model's likeness when it published nude pictures of her without consent).) According to the Restatement, the purpose of this tort is to protect the "interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness." (Restatement (Second) of Torts § 652C, Comment *a* (1977).) Illustrations of this tort provided by the Restatement include the publication of a person's photograph without consent in an advertisement; operating a corporation named after a prominent public figure without the person's consent; impersonating a man to obtain information regarding the affairs of the man's wife; and filing a lawsuit in the name of another without the other's consent. Restatement (Second) of Torts § 652C, Comment *b* (1965).

Plaintiffs claim that defendants appropriate information about cardholders' personalities, including their names and perceived lifestyles, without their consent. Defendants argue that their practice does not adversely affect the interest of a cardholder in the "exclusive use of his own identity," using the language of the Restatement. Defendants also argue that the cardholders' names lack value and that the lists that defendants create are valuable because "they identify a useful aggregate of potential customers to whom offers may be sent."

Defendants cite *Cox v. Hatch* (Utah 1988), 761 P.2d 556, to support their argument. In *Cox*, the supreme court of Utah held that there had been no wrongful appropriation of plaintiffs' images through use of their pictures in campaign advertisements because the plaintiffs did not allege that their images had any intrinsic value or that they enjoyed any particular fame or notoriety. (*Cox*, 761 P.2d at 564.) Even more persuasive is *Shibley v. Time, Inc.* (1975), 45 Ohio App. 2d 69, 341 N.E.2d 337, discussed above, wherein the court of appeals of Ohio found that merely placing a person's name on a "personality profile" list and providing that list to a third party did not constitute tortious appropriation. *Shibley*, 45 Ohio App. 2d at ___, 341 N.E.2d at 339.

To counter defendants' argument, plaintiffs point out that the tort of appropriation is not limited to strictly commercial situations. See *Annerino v. Dell Publishing Co.* (1958), 17 Ill. App. 2d 205, 208, 149 N.E.2d 761 (implying that the holding of *Eick v. Perk Dog Food Co.* (1952), 347 Ill. App. 293, 106 N.E.2d 742, was being expanded beyond strictly commercial situations); *Douglass v. Hustler Magazine* (7th Cir. 1985), 769 F.2d 1128, 1138 (recognizing a good appropriation claim under Illinois law for commercial nonadvertising use of photographs); see also *Zacchini v. Scripps-Howard Broadcasting Co.* (1976), 47 Ohio 2d 224, 351 N.E.2d 454, *rev'd on other grounds* (1977), 433 U.S. 562, 53 L. Ed. 2d 965, 97 S. Ct. 2849 (holding that Ohio law does not limit appropriation claims to commercial appropriation).

■ Nonetheless, we again follow the reasoning in *Shibley* and find that plaintiffs have not stated a claim for tortious appropriation because they have failed to allege the first element. Undeniably, each cardholder's name is valuable to defendants. The more names included on a list, the more that list will be worth. However, a single, random cardholder's name has little or no intrinsic value to defendants (or a merchant). Rather, an individual name has value only when it is associated with one of defendants' lists. Defendants create value by categorizing and aggregating these names. Furthermore, defendants' practices do not deprive any of the cardholders of any value their individual names may possess.

## CONSUMER FRAUD ACT

■ Plaintiffs' complaint also includes a claim under the Illinois Consumer Fraud Act. (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.* (now 815 ILCS 505/1 *et seq.* (West 1992)).) To establish a deceptive practice claim, a plaintiff must allege and prove (1) the misrepresentation or concealment of a material fact, (2) an intent by defendant that plaintiff rely on the misrepresentation or concealment, and (3) the deception occurred in the course of conduct involving a trade or commerce. Ill. Rev. Stat. 1991, ch. 121½, par. 262 (now 815 ILCS 505/2 (West 1992)); *Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 542, 607 N.E.2d 194, 198.

In *Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312, the defendant insurance company failed to inform its customers, at the time of sale of insurance policies, of its practice of denying automobile-theft claims on the basis of polygraph examinations. The court held that the plaintiff's assertion that the defendant failed to disclose its claims adjustment practices sufficiently alleged a deceptive practice under the Act. (*Elder*, 201 Ill. App. 3d at 751, 558 N.E.2d at 1321-23.) The court found this misrepresentation to be material because a customer would be expected to rely on this informa-

tion when making a decision to buy insurance from the defendant. *Elder*, 201 Ill. App. 3d at 751, 558 N.E.2d at 1322.

■ According to the plaintiffs, defendants conducted a survey which showed that 80% of Americans do not think companies should release personal information to other companies. Plaintiffs have alleged that defendants did disclose that it would use information provided in the credit card application, but this disclosure did not inform the cardholders that information about their card usage would be used. It is highly possible that some customers would have refrained from using the American Express Card if they had known that defendants were analyzing their spending habits. Therefore, plaintiffs have sufficiently alleged that the undisclosed practices of defendants are material and deceptive.

As to the second element, the Act only requires defendants' intent that plaintiffs rely on the deceptive practice. Actual reliance is not required. (*Siegel*, 153 Ill. 2d at 542, 607 N.E.2d at 198.) "A party is considered to intend the necessary consequences of his own acts or conduct." (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 566, 491 N.E.2d 464, 474.) When considering whether this element is met, good or bad faith is not important and innocent misrepresentations may be actionable. (*Warren*, 142 Ill. App. 3d at 566, 491 N.E.2d at 474.) Defendants had a strong incentive to keep their practice a secret because disclosure would have resulted in fewer cardholders using their card. Thus, plaintiffs have sufficiently alleged that defendants intended for plaintiffs to rely on the nondisclosure of their practice.

The third element is not at issue in this case. However, defendants argue that plaintiffs have failed to allege facts that might establish that they suffered any damages. The Illinois Consumer Fraud Act provides a private cause of action for damages to "[a]ny person who suffers damage as a result of a violation of th[e] Act." (Ill. Rev. Stat. 1991, ch. 121½, par. 270a (now 815 ILCS 505/10a(a) (West 1992)).) Defendants contend, and we agree, that the only damage plaintiffs could have suffered was a surfeit of unwanted mail. We reject plaintiffs' assertion that the damages in this case arise from the disclosure of personal financial matters. Defendants only disclose which of their cardholders might be interested in purchasing items from a particular merchant based on card usage. Defendants' practice does not amount to a disclosure of personal financial matters. Plaintiffs have failed to allege how they were damaged by defendants' practice of selecting cardholders for mailings likely to be of interest to them.

Plaintiffs argue that the consumer fraud statutes of other States allow recovery of mental anguish even if no other damages are pled or proved. Apparently, plaintiffs would like this court to assume that a third party's knowledge of a cardholder's interest in their goods or services causes mental anguish to cardholders. Such an assumption without any supporting allegations would be wholly unfounded in this case. Therefore, we hold that plaintiffs have failed to allege facts that might establish that they have suffered any damages as a result of defendants' practices.

Accordingly, for the reasons set forth above, we affirm the order of the circuit court of Cook County.

Affirmed.

RAKOWSKI and CAHILL, JJ., concur.