4 A.3d 1156 (2010)
The PENNSYLVANIA STATE EDUCATION ASSOCIATION, By Lynne WILSON, General Counsel, William McGill, F. Darlene Albaugh, Heather Kolanich, Wayne Davenport, Frederick Smith, Jamie McPoyle, Brianna Miller, Valerie Brown, Janet Layton, Korri Brown, Al Reitz, Lisa Lang, Brad Group and Randall Sovisky, Petitioners,
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, Office of Open Records, and Terry Mutchler, Executive Director of the Office of Open Records, Respondents.
No. 396 M.D. 2009.
Commonwealth Court of Pennsylvania.
Argued March 17, 2010.
Decided September 24, 2010.
*1157 Thomas W. Scott and Katherine Voye, Harrisburg, for petitioners.
Lucinda C. Glinn, Harrisburg, for respondents, Office of Open Records and Terry Mutchler.
William W. Warren, Jr., Harrisburg, for intervenor, PA Association of School Retirees.
James W. Young, Springfield, VA, for intervenor, Simon Campbell.
BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.
OPINION BY Judge LEAVITT.
The Pennsylvania State Education Association (PSEA) petitions this court for a judgment declaring the home addresses of public school employees to be exempt from disclosure under the Right-to-Know Law[1] and enjoining the Office of Open Records from permitting their disclosure. In response, the Office of Open Records has filed preliminary objections seeking to have the action dismissed for lack of jurisdiction *1158 and for failure to state a cause of action. In essence, the Office of Open Records contends that the statutory procedure for resolving disputes arising from document requests made under the Right-to-Know Law is exclusive and bars PSEA's attempt to seek declaratory and equitable relief.

Background
We begin with a procedural history of this case. Shortly after the enactment of the 2009 version of the Right-to-Know Law, PSEA requested an advisory opinion from the Office of Open Records that a public school employee's home address is exempt from disclosure under the Right-to-Know Law. Petition for Review, ¶ 44. The Office of Open Records responded, after some delay, that PSEA's request was moot because the Office had already made several determinations holding, generally, that the home addresses of public employees, including those employed by school districts, were not exempt from disclosure. Petition for Review, ¶ 49.
PSEA then filed the instant petition for review. It asserted that numerous school districts had received requests for the names and addresses of public school employees, and some had already released this information. Petition for Review, ¶¶ 92-93. Contending that the public school employee members of PSEA lacked any adequate remedy of law to prevent the release of private information protected by the Pennsylvania Constitution, PSEA sought to enjoin the Office of Open Records from continuing to sanction a violation of the "right to privacy of every ... public school employee...." Petition for Review, ¶ 91. PSEA's theory is that the Right-to-Know Law can be construed to exempt the disclosure of public school employees' addresses or, alternatively, must be so construed lest the statute interfere with the right of privacy conferred upon public school employees by the Pennsylvania Constitution.
With its complaint, PSEA filed an application for a preliminary injunction to prevent the Office of Open Records from directing any school to release the addresses of public school employees, pending the outcome of a decision on the merits of its request for permanent injunctive relief.[2] On July 28, 2009, after a hearing, this Court granted the request for a preliminary injunction. Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development, Office of Open Records, 981 A.2d 383 (Pa.Cmwlth.2009). On August 17, 2010, the Pennsylvania Supreme Court affirmed this Court's order, without prejudice to any party's right to appeal a final disposition of the present action. Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development, Office of Open Records, ___ Pa. ___, 2 A.3d 558 (2010).
On August 6, 2009, the Office of Open Records filed preliminary objections to PSEA's petition for review, seeking the *1159 petition's dismissal on several grounds. First, the Office of Open Records contends that this Court lacks subject matter jurisdiction. It contends that the statutory remedy in the Right-to-Know Law is exclusive and deprives this Court of jurisdiction over PSEA's request for declaratory relief. Second, it asserts that PSEA and its members lack standing because the alleged harm is speculative at best and not immediate, direct and substantial. Third, it asserts that the petition for review fails to state a cause of action because neither the Right-to-Know Law nor the Pennsylvania Constitution has established a blanket right in every public school employee to have his address kept private. Such rights, if any, can only be determined on a case-by-case basis, depending on the circumstances of the individual employee.
In ruling on preliminary objections, we must accept as true all well-pleaded material allegations, as well as all inferences reasonably deducible therefrom. Pennsylvania Chiropractic Federation v. Foster, 136 Pa.Cmwlth. 465, 583 A.2d 844, 847 (1990). Preliminary objections will be sustained where, assuming the truth of the facts as pled, it is clear that the law does not permit recovery. Stilp v. Cappy, 931 A.2d 108, 110 (Pa.Cmwlth.2007).

Right-to-Know Law
The 1957 version of the Right-to-Know Law[3] placed the burden on the requester to prove that the requested record was a public record. See Rowland v. Public School Employees' Retirement System, 885 A.2d 621, 627 (Pa.Cmwlth.2005); Section 2 of the prior Right-to-Know Law, formerly 65 P.S. § 66.2.[4] The former law defined "public record" to exclude those records that "would operate to the prejudice or impairment of a person's reputation or personal security." Section 1(2) of the prior Right-to-Know Law, formerly 65 P.S. § 66.1(2). This Court interpreted that statutory definition "as creating a privacy exception to the Right-to-Know Law's general rule of disclosure." Hartman v. Department of Conservation and Natural Resources, 892 A.2d 897, 905 (Pa. Cmwlth.2006). When considering this "privacy exception," we applied a balancing test that weighed the privacy interests at issue against the public benefits to follow from the disclosure of the document in question. Id. at 906. Generally, home addresses were exempted from disclosure under this balancing test, but the right to privacy in one's home address was never absolute. See Goppelt v. City of Philadelphia Revenue Department, 841 A.2d 599, 606 (Pa.Cmwlth.2004) (allowing the disclosure of delinquent taxpayers' addresses because it benefitted the public).
The current Right-to-Know Law became effective on January 1, 2009, and it differs from the 1957 version in two ways *1160 critical to PSEA's petition for review. First, all records held by an agency are now presumed to be public records.[5] Second, the language and scope of the "personal security" exemption has changed.
Beginning with the second of these key differences, the Right-to-Know Law now exempts the disclosure of a record that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Section 708(b)(1)(ii) of the Right-to-Know Law, 65 P.S. § 67.708(b)(1)(ii). This standard is harder to satisfy than was the personal security exemption in the former law, which exempted the disclosure of a record that "would operate to the prejudice or impairment of a person's reputation or personal security." Section 1(2) of the former Right-to-Know Law, formerly 65 P.S. § 66.1(2). Notably, the current Right-to-Know Law requires a risk of physical harm to an individual and does not aim to protect an individual's reputation.
The new Right-to-Know Law also expands the meaning of a "public record" by establishing a presumption that every record of a state or local agency is a public record. Section 102 of the Right-to-Know Law, 65 P.S. § 67.102. At the same time, the Law creates exemptions for certain information often contained in a public record. Specifically, Section 708(b)(6)(i)(A)-(C) identifies exemptions for the following information:
(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
(B) A spouse's name, marital status or beneficiary or dependent information.
(C) The home address of a law enforcement officer or judge.
65 P.S. § 67.708(b)(6)(i)(A)-(C). Notably, subsection (C) prevents the disclosure of home addresses for judges and law enforcement officers, but it is silent as to other state employees.
Finally, the new Right-to-Know Law provides that disclosure of a record will not be required where disclosure would violate another State or Federal law. Section 3101.1 states:
If the provisions of this act regarding access to records conflict with any other Federal or State law, the provisions of this act shall not apply.
65 P.S. § 67.3101.1.

Positions of Parties
PSEA argues that there is a right to privacy implicit in Article I, Sections 1[6] and 8[7] of the Pennsylvania Constitution *1161 that prohibits the disclosure of any teacher's home address. In other words, PSEA begins with the premise that to be constitutional, the Right-to-Know Law must be read to prohibit disclosure of teacher addresses. From this premise, PSEA makes two points.
First, PSEA argues that Section 708(b)(6)(i)(A) must be given the same effect as the personal security exemption in the 1957 version of the Right-to-Know Law. This means that a balancing test must be used whenever a requester demands a public record that may trigger the personal security exemption in the new law, as was done under the 1957 version. According to PSEA, in passing the new Right-to-Know Law:
[t]he General Assembly never intended to trench upon the right to privacy and never abolished the constitutional balancing act that courts and administrative agencies have been doing for decades when a Right-to-Know Law request implicates private personal information, such as a home address.
Brief of Petitioners, at 26. Accordingly, PSEA argues that a teacher's home address is a "confidential personal identification number," and exempt under Section 708(b)(6)(i)(A). This is true even though Section 708(b)(6)(i)(C) expressly exempts only the release of home addresses for judges and law enforcement officers.
Second, PSEA argues that because the Pennsylvania Constitution establishes a right of privacy, it is a "State law" that prohibits the disclosure of a teacher's home address under Section 3101.1 of the Right-to-Know Law.[8]
In response, the Office of Open Records argues that the Pennsylvania Constitution does not establish a right to privacy in one's home address and that PSEA's effort to revive the "privacy exception," judicially established under the 1957 version of the Right-to-Know Law, cannot be reconciled with the language of the new enactment.
First, the Office of Open Records argues that Article I, Section 1 of the Pennsylvania Constitution did not make a "right to privacy" one of the "indefeasible" rights acknowledged in Article I, Section 1, and no court has ever so construed Article I, Section 1. Further, Article I, Section 8, which relates to search and seizure, cannot be construed to create such a privacy right because our Supreme Court has expressly held that there is no reasonable expectation of privacy in one's home address. Commonwealth v. Duncan, 572 Pa. 438, 455, 817 A.2d 455, 465 (2003) (holding that it "is all but impossible to live in our current society without repeated disclosure of one's name and address.").[9] Without a reasonable expectation of privacy in a home address, Article I, Section 8 cannot be invoked. Simply, the Pennsylvania Constitution, although most assuredly a *1162 "law," does not create or protect a citizen's right to keep his home address a secret. Thus, it does not trigger Section 3101.1 of the Right-to-Know Law.
Second, the Office of Open Records argues that a teacher's right to prevent disclosure of his or her address, if one exists, must come directly from the language of the new Right-to-Know Law. However, the new Law contains "different statutory language, [a] clear intent of openness, and [a] burden shift to the agency." Brief of Respondents, at 23. Essentially, the Office of Open Records argues that the new Right-to-Know Law has changed so much that it is impossible to use precedent developed under the 1957 version of the Right-to-Know Law that determined a "privacy" right by using a balancing test.
The Right-to-Know Law is intended to increase access to records by presuming all records held by an agency are public records. See Bowling v. Office of Open Records, 990 A.2d 813, 823 (Pa. Cmwlth.2010). In Bowling, this Court stated:
The new Law is significantly different in that the prior version of the Law narrowly defined the term "public record." Under the current Law, however, any record, including financial records of a Commonwealth or local agency, is a public record to the extent the record: is not exempt from disclosure under the Law; is not exempt under Federal or State law, regulation, or judicial order or decree; or is not protected by privilege.
Id. Unlike the 1957 statute, the current version of the Right-to-Know Law makes the motive or reasonableness of a request for public records irrelevant.[10]See, e.g., Section 302(b) of the Right-to-Know Law, 65 P.S. § 67.302(b) (agency may not deny "access to a public record due to the intended use of the public record ..."). Likewise, the so-called privacy exception that arose in the decisional law interpreting the 1957 enactment was based upon the "personal security exemption" in the statute. Pennsylvania State University v. State Employees' Retirement Board, 594 Pa. 244, 258, 935 A.2d 530, 538 (2007) ("[W]hile Appellants invite this Court to separate our right to privacy analysis from our personal security exception analysis, it is clear that no such division is warranted."). To conclude that the privacy exception and its attendant balancing test have continued viability under the new Law is a proposition fraught with challenge, but we need not face that challenge because we conclude that we lack jurisdiction.

Jurisdiction
PSEA asserts that its request for declaratory relief is appropriate because there is an actual or threatened invasion of its members' right to privacy in their home addresses and, therefore, an actual controversy. Additionally, PSEA argues that there are no administrative remedies available to its members to protect against this invasion. This is because a teacher does not know when a request for a home address is submitted to a school district, and there is no mechanism in the Right-to-Know Law by which a teacher, or any state employee, can oppose disclosure of personal information that could adversely affect the employee's personal security.
The Office of Open Records rejoins that PSEA is trying to circumvent the statutory process established in the Right-to-Know Law. Under the Declaratory Judgments Act, a court lacks jurisdiction to *1163 grant declaratory relief in a matter subject to "a tribunal other than a court." 42 Pa.C.S. § 7541(c)(2). In Lashe v. Northern York County School District, 52 Pa. Cmwlth. 541, 417 A.2d 260, 264 (1980), this Court held that where a statutory remedy exists, it is exclusive unless the jurisdiction of the courts is preserved in the statute creating the remedy. The Office of Open Records explains that the subject matter of PSEA's complaint, i.e., a school district's disclosure of a teacher's address by a requester, is a subject that has been placed within the exclusive jurisdiction of a tribunal other than a court, i.e., the Office of Open Records.
The Office of Open Records explains the statutory procedures as follows. School districts, which are local agencies, decide whether or not to release a record. See Section 302(a) of the Right-to-Know Law, 65 P.S. § 67.302(a) (a "local agency shall provide public records in accordance with this act."). The school district's decision can then be appealed to the Office of Open Records. See Section 1101(a) of the Right-to-Know Law, 65 P.S. § 67.1101(a).[11] A teacher may elect to participate in a Section 1101(c)(1) proceeding. After the Office of Open Records makes a final determination, a teacher may appeal that determination to the Court of Common Pleas of the County where the school district is located. See Section 1302(a) of the Right-to-Know Law, 65 P.S. § 67.1302(a).[12] The Office of Open Records maintains that this statutory procedure is mandated by the Right-to-Know Law, which deprives this Court, or any court, of subject matter jurisdiction. This is likewise true for PSEA's request for injunctive relief. Borough of Green Tree v. Board of Property Assessments, 459 Pa. 268, 278-79, 328 A.2d 819, 824 (1974) (the existence of an adequate statutory remedy forecloses a court of equity's jurisdiction over a matter).
Further, the Office of Open Records asserts that there is a statutory mechanism for a PSEA member, who feels threatened by the release of his or her home address, to participate in the statutory procedure. Section 1101(c)(1) of the Right-to-Know Law allows any individual with a direct interest in a record request to
file a written request to provide information or to appear before the appeals officer [of the Office of Open Records] or *1164 to file information in support of the requester's or agency's position.
65 P.S. § 67.1101(c)(1). The appeals officer can allow the submission of this information even when no hearing has yet been held and his opinion has not yet been written, so long as the hearing officer believes the proffered information will have probative value. Section 1101(c)(2) of the Right-to-Know Law, 65 P.S. § 67.1101(c)(2).[13]
Again, we do not decide the question of whether the statutory procedure established in the Right-to-Know forecloses the ability of this Court, or any court, to circumvent the statutory procedure by allowing PSEA's action for declaratory and equitable relief to proceed. There is a more fundamental reason why this Court cannot hear PSEA's complaint.
The Judicial Code confers original jurisdiction in the Commonwealth Court for "all civil actions or proceedings... [a]gainst the Commonwealth government." See 42 Pa.C.S. § 761(a)(1). Naming a Commonwealth agency is not enough to satisfy Section 761(a)(1). The Commonwealth agency so named must have a cognizable interest in the outcome of the action. Pennsylvania State Education Association v. Department of Education, 101 Pa.Cmwlth. 497, 516 A.2d 1308 (1986) (holding this Court lacked original jurisdiction over suit against Department of Education where Department had only minimal involvement in challenged interdistrict tuition agreement). Stated otherwise, "[a] Commonwealth agency or official is only an indispensable party to a proceeding if the action `cannot conceivably be concluded with meaningful relief without the sovereign state itself becoming directly involved.'" Foreman v. Chester-Upland School District, 941 A.2d 108, 113 (Pa.Cmwlth.2008) (quoting Pennsylvania State Education Association, 516 A.2d at 1310). An indispensable party "is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing upon those rights." Piper Aircraft Corp. v. Insurance Co. of North America, 53 Pa.Cmwlth. 209, 417 A.2d 283, 285 (1980).
In a request for records pursuant to the Right-to-Know Law, there are two parties: the requester and the agency whose records are being requested. The Office of Open Records is the tribunal that resolves disputes between requesters and agencies. The Office of Open Records itself, as a quasi-judicial tribunal, lacks any interest in the outcome of its adjudications. East Stroudsburg University Foundation v. Office of Open Records, 995 A.2d 496, 507 (Pa.Cmwlth.2010) (holding that Office of Open Records lacks authority to participate in appeals of its decisions because as an adjudicatory body, "it is not aggrieved by the release of another's agency records."). Just as the Office of Open Records cannot participate in an appeal of one of its adjudications, it cannot serve as the appropriate defendant in PSEA's original jurisdiction action at issue here.[14]
In his dissent, Judge Pellegrini contends that by naming not just the Office of Open Records but also its Executive Director *1165 and the Department of Community and Economic Development, PSEA has brought an action "against the Commonwealth government." 42 Pa.C.S. § 761(a)(1). However, it is not the number of Commonwealth defendants named in the complaint but their function that is determinative of this Court's jurisdiction.
PSEA seeks to direct the Office of Open Records in the exercise of its adjudicatory responsibility with respect to records in the possession of school districts. It is the school districts, not the Office of Open Records, that will receive the requests for teacher addresses. Accordingly, it is the school districts, not the Office of Open Records, that are the appropriate defendants to PSEA's privacy claims.[15] Further, the relief sought by PSEA, i.e., a directive to the Office of Open Records on how to adjudicate, places this complaint beyond our jurisdiction. It would be error for a litigant to sue the Environmental Hearing Board for the purpose of directing how it should construe and apply a statute in future litigation, and this error would only be compounded, not corrected, by adding the Board's individual judges as defendants.
A litigant challenging the constitutionality of the act commonly known as the Clean Streams Law,[16] for example, must sue the Pennsylvania Department of Environmental Protection, which daily takes executive action to grant or deny permits under authority of the Law. See Section 5 of the Clean Streams Law, 35 P.S. § 691.5; Concerned Citizens for Orderly Progress v. Department of Environmental Resources, 36 Pa.Cmwlth. 192, 387 A.2d 989 (1978) (discussing, inter alia, Department's considerations under Clean Streams Law when issuing permits). To pursue a claim that a provision of the Clean Streams Law, or any state environmental law, violates a constitutionally protected right, an action could be initiated in this Court against the Department and the Secretary of Environmental Protection. See, e.g., Northern Tier Solid Waste Authority v. Commonwealth, 825 A.2d 793 (Pa.Cmwlth.2003) (action in this Court's original jurisdiction against the Departments of Revenue and Environmental Protection, and their Secretaries, asserting that municipal authorities' constitutional rights to unimpaired contracts were violated by solid waste disposal fees). It would be error, however, to bring such an action against the Environmental Hearing Board, which "enforces" the Clean Streams Law strictly in a quasi-judicial capacity. Such a capacity does not give the Environmental Hearing Board a cognizable interest in the outcome of litigation, such as that found in Northern Tier to exist for the Department of Environmental Protection.
Courts enforce statutes. However, to challenge a statute or its application, it is never acceptable to name a court as the defendant. Indeed, merely to state the proposition is to refute it. It is no different for the Office of Open Records, which functions as a quasi-judicial tribunal, not a regulatory agency. It is not a proper defendant to PSEA's action, which seeks to direct its future adjudicatory actions.

Conclusion
The appropriate defendant to the PSEA's action is not the Office of Open Records but, rather, the school districts *1166 that hold the records and personal information sought to be protected from disclosure by PSEA. In the absence of a Commonwealth agency as a defendant, this Court lacks jurisdiction. Accordingly, the petition for review must be dismissed.
Judge SIMPSON did not participate in the decision in this case.

ORDER
AND NOW, this 24th day of September, 2010, it is hereby ORDERED that the preliminary objections of the Office of Open Records, in the above-captioned matter, are hereby SUSTAINED and the case DISMISSED without prejudice.
DISSENTING OPINION BY Judge PELLEGRINI.
The Pennsylvania State Education Association and various individuals (collectively, PSEA) brought this action in our original jurisdiction seeking a declaratory judgment that school districts are not required by the Right-to-Know Law (RTKL)[1] to provide home addresses of public school employees to a requester and injunctive relief to prevent school districts from releasing this information. PSEA argues that this is the only way to prevent release of the employees' home addresses because many school districts have been releasing addresses against their wishes because they do not have the will or resources to appeal the requests before the Office of Open Records (OOR) and because the employees whose home addresses have been or are about to be released have no recourse to prevent the release of this information. Respondents have filed preliminary objections claiming that PSEA's declaratory judgment action is not maintainable because there is an adequate remedy at law and there is no constitutional right to privacy to prevent disclosure of names. Like the majority, I, too, would dismiss the action but would do so by reaching the merits and find that there is no statutory or constitutional right to prevent the disclosure of home addresses of public employees. Accordingly, I respectfully dissent.

I.
The majority, on its own, finds that we lack jurisdiction of the action because there is no "indispensible party" against whom we can order meaningful relief. It arrives at that holding because the Judicial Code confers jurisdiction in the Commonwealth Court for "civil actions or proceedings against the Commonwealth Government." 42 Pa.C.S. § 761(a). Because we have held in East Stroudsburg University Foundation v. Office of Open Records, 995 A.2d 496 (Pa.Cmwlth.2010), that the OOR, as an administrative tribunal, lacks authority to participate in appeals to defend its decisions, the majority then finds that "[j]ust as the Office of Open Records cannot participate in the appeal of one of its adjudications, it cannot participate as a party to PSEA's declaratory judgment action." Lacking an indispensible party or, more accurately, any party, it holds that we lack jurisdiction and dismisses the petition.
The majority's holding that we lack jurisdiction assumes that just because the OOR cannot defend its decisions before this court, it is not sui juris. I disagree with that conclusion for several reasons. First, the parties being sued are "Commonwealth of Pennsylvania, Department of Community and Economic Development, Office of Open Records and Terry Mutchler, Executive Director of the Office of Open Records," not just the OOR to defend *1167 a particular decision. Second, all of the Respondents, including the OOR, are part of the "Commonwealth government." The Judicial Code defines "Commonwealth government" as "The government of the Commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the Governor, and the departments, boards, commissions, authorities and officers and agencies of the Commonwealth ..." 42 Pa.C.S. § 102. All of those entities, including the OOR as an administrative agency, fall within that definition. Third, there is no lack of an indispensible party because we can order meaningful relief by directing the OOR not to order the release of home addresses of state employees. Because we have a party over which we can order meaningful relief, I would hold, unlike the majority, that we have jurisdiction.

II.
Under the Declaratory Judgment Act, 42 Pa.C.S. §§ 7531-7541, a party may seek such relief when the grant of relief will provide the party with a clear judicial declaration of his legal rights and is appropriate where such a determination will help resolve a genuine and justiciable controversy. Mazin v. Bureau of Professional and Occupational Affairs, 950 A.2d 382 (Pa.Cmwlth.2008). However, relief is not available under this subchapter for a proceeding "within the exclusive jurisdiction of a tribunal other than a court" or "involving an appeal from an order of a tribunal." 42 Pa.C.S. § 7541(c). "The declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum." Dept. of General Services v. Frank Briscoe Co., Inc., 502 Pa. 449, 459, 466 A.2d 1336, 1341 (1983).
Respondents contend that PSEA's declaratory judgment action is not maintainable because there is an adequate remedy at law. It cites to a previous single judge decision that we reference in East Stroudsburg that allowed the East Stroudsburg Foundation to participate in the appeal of a decision of the OOR that ordered the Foundation to turn over its records pursuant to Section 506(d)(1) of the RTKL.[2] While acknowledging that the RTKL did not expressly provide that a person with a "direct interest" may appeal a decision that adversely affected his or her "direct interest," we held that because the records being sought were the Foundation's records, not East Stroudsburg University's records, the Foundation was entitled to participate as a party in the appeal because otherwise it would be denied its due process rights.
Even if that single judge decision was precedential, that is not the situation here because the records being sought are not Petitioners but rather are the school districts, the governmental entities in the various requests that led to this action. Absent a claim being brought such as the one contained in Section 506(d)(1) of the RTKL, where the records being sought are in the possession of a third party, no adequate administrative remedy exists to prevent the disclosure of public records in the possession of a governmental body.
*1168 While it may seem on the surface that Section 1101(c) of the RTKL[3] provides such an adequate administrative remedy, that is not, in fact, the case. Section 1101(c) provides:
(c) Direct Interest.
(1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.
(2) The appeals officer may grant a paragraph request under(1) if:
(i) no hearing has been held;
(ii) the appeals officer has not yet issued its order; and
(iii) the appeals officer believes the information will be probative.
(3) Copies of the written request shall be sent to the agency and the requester.
As can be seen, while Section 1101(c) allows a party with a direct interest to participate, it does not make that person a party to the action. If there is an adverse determination, that person, as a mere participant, does not have a right to appeal because Section 1301 of the RTKL[4] provides a right to appeal only to a requestor or the agency. Because merely allowing a person seeking to prevent disclosure of information in the possession of a public body to only participate without the right to appeal does not form an adequate administrative remedy, I would deny Respondents' preliminary objection to dismiss on the basis that PSEA has an adequate remedy at law.

III.
Respondents also contend that there is nothing in the RTKL that forecloses the disclosure of home addresses. In response, PSEA contends that two separate sections of the RTKL can be read to create a statutory right of non-disclosure of home addresses of public school employees. PSEA first argues that Section 708(b)(1)(ii) creates a statutory right to non-disclosure of home addresses. Section 708(b)(1)(ii) provides that records are exempt from access if disclosure of them "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." Disclosure of any home addresses, according to PSEA, falls under this personal security exception to the RTKL.
A glance at the language of Section 708(b)(1)(ii) quickly dispels this notion. It is impossible to reasonably conclude in a world in which disclosure of home addresses, whether to open a bank account, set up utilities, subscribe to a newspaper, register to vote, etc. etc. etc., is ubiquitous that such disclosure is "reasonably likely" to result in a substantial and demonstrable *1169 risk of physical harm. In fact, disclosure of home addresses extremely rarely results in a risk of physical harm to the person whose address has been disclosed. Otherwise, many people who disclose their home addresses would have been subject to physical harm. Extreme rarity, which is the opposite of reasonable likelihood, does not justify a blanket exemption on home addresses and, thus, PSEA's argument fails.
That is not to say that a particular home address must be released upon request. What Section 708(b)(1)(ii) does is to bar the release of a record, which could include a home address, if release of that record would be reasonably likely to result in harm. Thus, if it can be shown that releasing a particular teacher's address would be reasonably likely to result in harm to that particular teacher, that information may be withheld.
PSEA next argues that the "other confidential personal identification number" provision in Section 708(b)(6)(i)(A) exempts home addresses from disclosure under the RTKL. Section 708(b)(6)(i)(A) provides:
The following personal identification information [is exempt from disclosure]: A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.
PSEA fails to explain why it believes that home addresses are "other confidential personal identification numbers," merely asserting that they are. First, a home address is not a number. It is a number plus a street address plus a city, state and zip code. Second, home addresses are too important a category to be relegated to a catch-all provision when other means of communicating with individuals, such as email addresses or telephone numbers that are much less intrusive, are specifically listed.
Rather than the sections of the RTKL that PSEA cites, two other sections clearly demonstrate that home addresses of public school employees are not exempt from disclosure. Section 708(b)(6)(i)(C) exempts from disclosure the home addresses of law enforcement officers and judges, and Section 708(b)(30) exempts from disclosure the home addresses of minor children. These sections would be superfluous if all home addresses of public employees were exempt from disclosure. Courts are not to interpret a statute in a way that renders sections of the statute superfluous. 1 Pa. C.S. § 1921(a); Holland v. Marcy, 584 Pa. 195, 883 A.2d 449 (2005).[5]

*1170 IV.
PSEA also contends that Article I, Sections 1 and 8 of the Pennsylvania Constitution provide a constitutional right to privacy in home addresses. While it is true that there is a right to privacy in the Pennsylvania Constitution, see Denoncourt v. Commonwealth, 504 Pa. 191, 470 A.2d 945 (1983), in the seminal case of Commonwealth v. Duncan, 572 Pa. 438, 817 A.2d 455 (2003), our Supreme Court held that the constitutional right to privacy does not extend to one's home address. It is worth quoting from Duncan at length:
[W]e agree with the Commonwealth that any subjective expectation of privacy that appellant may have had in the name and address information is not an expectation which society would be willing to recognize as objectively reasonable in light of the realities of our modern age. Whether registering to vote, applying for a driver's license, applying for a job, opening a bank account, paying taxes, etc., it is all but impossible to live in our current society without repeated disclosures of one's name and address, both privately and publicly. There is nothing nefarious in such disclosures. An individual's name and address, by themselves, reveal nothing about one's personal, private affairs. Names and addresses are generally available in telephone directories, property rolls, voter rolls, and other publications open to public inspection. In addition, it has become increasingly common for both the government and private companies to share or sell name and address information to unaffiliated third parties....
In this day and age where people routinely disclose their names and addresses to all manner of public and private entities, this information often appears in government records, telephone directories and numerous other documents that are readily accessible to the public, and where customer lists are regularly sold to marketing firms and other businesses, an individual cannot reasonably expect that his identity and home address will remain secretespecially where, as here, he takes no specific action to have his information treated differently and more privately.
We are further convinced of the correctness of our conclusion that no privacy expectation reposes in this information by the fact that the majority of courts to consider the question have agreed that a person's name and address is not information about which a person can have a reasonable expectation of privacy ...
Id. at 455-56, 817 A.2d at 465-66.[6]
Our Supreme Court reached this conclusion after examining numerous civil and *1171 criminal cases from other jurisdictions. Included among the cases our Supreme Court relied upon are: Local 100, Service Employees' International Union v. Forrest, 675 So.2d 1153 (La.Ct.App.1996) (state agency could not deny labor union's request for names, addresses, telephone numbers and places of employment of nurse's aides because they did not have a reasonable expectation of privacy in their identities or addresses); Tobin v. Michigan Civil Service Commission, 416 Mich. 661, 331 N.W.2d 184 (1982) (civil servants could not enjoin the state from releasing the names and addresses of all classified civil service employees to several labor organizations because disclosure of this information would not violate the civil servants' right to privacy under either the Michigan or United States Constitutions); Dwyer v. American Express Company, 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351 (1995) (American Express cardholders had no right of privacy in their names and addresses and so could not prevent credit card company from renting lists of their names and addresses); and Town of West Hartford v. Freedom of Information Commission, 218 Conn. 256, 588 A.2d 1368 (1991) (appellate court reversed trial court's ruling that firefighters' association could not have list of the names and addresses of all retired residents of the town because disclosure of names and addresses would not be a per se invasion of personal privacy).
Because there is no constitutional right to privacy in Pennsylvania that protects disclosure of home addresses and no provision in the RTKL that grants a statutory right to non-disclosure of public employee home addresses, I would have granted Respondents' preliminary objections in the nature of a demurrer and dismissed the case.
DISSENTING OPINION BY Judge McCULLOUGH.
I join in the dissent of Judge Pellegrini in so far as it concludes that this court has jurisdiction and that PSEA has standing under the Right to Know Law (RTKL)[1] to challenge these requests. I write separately to respectfully note my disagreement with the dissent's interpretation of the "personal security" exception of the new RTKL, section 708(b)(1)(ii), as well as with the analysis the majority suggests it would apply should it reach the merits. The majority correctly notes that the new RTKL now exempts the disclosure of a record that "would be reasonably likely to result in substantial and demonstrable risk of physical harm to or the personal security of an individual," section 708(b)(1)(ii)(A) of the RTKL, 65 P.S. § 67.708(b)(1)(ii)(A), but concludes that, because we do not have jurisdiction, we need not address whether the judicially created privacy exceptionwhich grew out of the statute's personal security exemptionand the balancing test employed by our courts in applying that exception, apply under the new RTKL. Because I agree with the dissent that we do have jurisdiction, I believe that we must address whether the balancing test applies.
As the majority notes, PSEA argues that the personal security exemption provided by section 708(b)(1)(ii)(A) must be given the same effect as the personal security exemption in the 1957 version of the RTKL and that a balancing test must be used whenever a requester demands a public record that may trigger the personal security exemption under the new law. The PSEA further maintains that, in passing *1172 the new RTKL, the General Assembly never intended to trench upon the right to privacy and never abolished the constitutional balancing act that courts and administrative agencies have been undertaking for decades when a RTKL request implicates private personal information, such as home addresses.
In addressing whether anything in the RTKL forecloses the disclosure of home addresses, the dissent blithely dismisses PSEA's contention that it can demonstrate by competent evidence that the disclosure of home addresses would result in a reasonable likelihood of substantial and demonstrable risk of physical harm to or the personal security of its members. According to the dissent, because the ubiquitous disclosure of home addresses rarely results in a risk of physical harm, any argument that a particular group could suffer a reasonable likelihood of harm must fail.[2] I cannot agree with this reasoning. Although it acknowledges that an individual might show that releasing his address would result in a reasonable likelihood of harm, thereby invoking the protection afforded by section 708(b)(1)(ii) of the RTKL, the dissent nevertheless concludes that a group of individuals could not possibly establish similar circumstances and would deny a group of individuals the opportunity to present similar relevant evidence. I also disagree with the proffered reasoning that the RTKL's provisions exempting disclosure of home addresses of law enforcement officers, judges and minor children would be superfluous "if all home addresses of public employees were exempt from disclosure." (Dissenting op. at 1169.) This case does not involve all public employees. More important, I believe it is illogical to conclude that the existence of statutory exemptions for certain groups reflects a legislative intent to deny similar protection to other groups where the evidence warrants it.
In addition, although the dissent notes that our Supreme Court has held that there is a right to privacy under the Pennsylvania Constitution, the dissent relies on the holding in Commonwealth v. Duncan, 572 Pa. 438, 817 A.2d 455 (2003), (a case decided under the old RTKL) for the proposition that the constitutional right to privacy does not extend to one's home address. Irrespective of whether this holding applies to civil as well as criminal cases, I believe that the context of Duncan is highly significant. In Duncan, the court held that a warrantless telephone call made by police to the appellant's bank, seeking the name and address associated with an ATM card used by a person suspected of a crime, did not violate the individual's constitutional right to privacy. In contrast to these circumstances, the present case involves a right to privacy because, and to the extent that, our courts have interpreted the personal security provisions of the RTKL as creating a right to privacy. Penn. State University v. State Employees' Retirement Board, 594 Pa. 244, 935 A.2d 530 (2007); Rowland v. Public School Employees' Retirement System, 885 A.2d 621 (Pa.Cmwlth.2005); Times Publishing Co., Inc. v. Michel, 159 Pa. Cmwlth. 398, 633 A.2d 1233 (1993). While the dissent discusses the first part of section 708(b)(1)(ii) of the RTKL, "physical harm", the second part of that section, "personal security," is absent from its analysis.
In Penn State University, our Supreme Court determined that the (former) RTKL accounts for an individual's right to privacy, and it observed that Pennsylvania courts have interpreted the law's personal *1173 security exemption as creating a privacy exception to the law's general disclosure rule. The court declined to separate a "right to privacy" exception from its analysis of the "personal security" exception and proceeded to apply the balancing test utilized in the typical constitutional analysis; the court described the appropriate analysis as one that, "subsumes the question of whether the potential impairment of any privacy interest outweighs the public interest in the dissemination at issue." Id. at 258-59, 935 A.2d at 538.
Our court set forth a similar analysis in Hartman v. Department of Conservation and Natural Resources, 892 A.2d 897 (Pa. Cmwlth.2006). In that case, the agency denied a request for the names and addresses of registered snowmobile owners on the grounds that (1) the records were not "public records" and (2) they were exempt from disclosure under the law's personal security exception as well as the privacy guarantee set forth in Article I, section 8 of the Pennsylvania Constitution. The court first concluded that the information was excepted from the law's definition of a public record because its release was prohibited by the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§ 2721-2725. Although observing that this determination technically ended the court's inquiry, we proceeded to address the question of whether the requested information also was shielded from disclosure under the law's reputation and personal security exceptions. This court then stated that it interprets the law's personal security and reputation exceptions "as creating a privacy exception to the law's general rule of disclosure. It is also generally accepted that a person has a privacy interest in his or her home address." Hartman, 892 A.2d at 905 (citations omitted). Thus, "[w]hen analyzing this exception, this Court applies a balancing test, weighing the privacy interests, and the extent to which they may be invaded, against the public benefits that would result from disclosure." Id. at 906. The court ultimately concluded that the public benefits asserted were nominal and were easily outweighed by the registrants' privacy interests in their names and addresses.
In Rowland v. Public School Employees' Retirement System, 885 A.2d 621 (Pa. Cmwlth.2005), the executive director of the Pennsylvania Association of School Retirees submitted a formal request, pursuant to the former RTKL, to the Public School Employees' Retirement System (PSERS), asking for the name, address, date of birth, date of retirement, years of credited service, last employer, and current monthly annuity of each PSERS annuitant. The issue before the court was whether PSERS properly refused to disclose the individuals' addresses and dates of birth on the grounds that such disclosure would violate members' right to privacy and confidentiality. The court first agreed with PSERS that section 8502(i) of the Public Employees' Retirement Code, 24 Pa.C.S. § 8502(i), directed PSERS to protect the confidentiality of the specific information requested by Rowland as well as other information about annuitants that impacts their privacy rights.
Next, we reviewed prior decisions construing the law's personal security exception as creating a right to privacy exception under the law and acknowledging a general right to privacy in one's home address.[3] In Rowland this court again recognized that this privacy exception is not absolute and that a balancing test must *1174 be applied to determine whether the privacy interests outweigh the public benefits that would result from disclosure. Observing that the benefits asserted would inure to the association, rather than the public at large, the court concluded that the balance favored non-disclosure of the requested information.
The issue before the court in Times Publishing Co. Inc. v. Michel, 159 Pa. Cmwlth. 398, 633 A.2d 1233 (1993), was the extent to which information contained in applications to carry firearms was subject to disclosure under the former RTKL. The court analyzed the disclosure of home addresses under the personal security exception, mindful that personal security was defined as freedom from harm, danger, fear, or anxiety and required a determination that disclosure would be "intrinsically harmful." Noting the dangers associated with possession of firearms, the court concluded that the personal security exception applied. Ultimately, however, the court determined that, in deciding whether requested information is protected by the personal security exception to the law, the court must apply a balancing test, weighing privacy interests and the extent to which they may be invaded against the public benefits that may result from disclosure.
I disagree with the majority's conclusion that the personal security exception provided by the former version of the RTKL has been replaced by a personal security exception to which the judicially created privacy right and corresponding balancing test no longer apply. To the contrary, the current RTKL plainly allows for an exception to the general rule of disclosure where personal security is at issue. I submit that the only significant relevant change from the old law is that the burden has been shifted to the public agencies to prove that a record is not "public."
The Office of Open Records (OOR) argues that the RTKL generally does not exclude home addresses of public school employees; instead, an individual may protect the disclosure of his home address by demonstrating a personal security reason, a factual determination that must be based on evidence presented. I believe that, just as the Supreme Court applied a balancing test to ascertain whether a personal security and therefore, privacy interest had been invaded, the same would apply here. In its March 5, 2009, request to OOR for an advisory opinion, PSEA cited statistics reflecting that, between 1996 and 2000, 559,000 teachers (approximately 28 of every 1,000 teachers) were victims of violent crimes; 3 of every 1000 teachers were the victims of serious crimes, such as rape and aggravated assault; and, in 1999-2000 nine percent of all teachers were threatened with injury by students. PSEA also cited local newspaper reports reflecting that, in Allegheny County, 621 students assaulted teachers in the period from 2000-2006, with 179 of those assaults occurring in 2006.[4]
Certainly, PSEA has attempted to show that public disclosure of the teachers' home addresses could jeopardize their personal security, and thus constitute an unwarranted invasion of their personal privacy. Based only on the pleadings, we cannot say with certainty that the law will not permit recovery. Accordingly, I would overrule the preliminary objections and direct *1175 OOR to file an Answer within 30 days.[5]
NOTES
[1] Act of February 14, 2008, P.L. 6, No. 3, 65 P.S. §§ 67.101-67.3104.
[2] In support of its application for a preliminary injunction, PSEA argued that:

The threat to teachers and other school employees is real, not merely academic. It has been reported that between 1996 and 2000, 559,000 teachers were victims of violent crimes; approximately 28 out of every 1,000 teachers were victims of such crimes; and 3 out of 1,000 teachers were the victims of serious violent crimes such as rape, sexual assault, robbery and aggravated assault.
Petitioners' Brief in Support of a Preliminary Injunction, at 8 (citing Violence Against Teachers, http://www.safeyouth.org/scripts/ faq/violteacher.asp). Therefore, "[u]nfettered access to home addresses can bring school-related violence to a school employee's door step." Id. at 10.
[3] Act of June 21, 1957, P.L. 390, formerly 65 P.S. §§ 66.1-66.9, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[4] This section provided:

Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.
Id. This Court interpreted this provision as requiring the requester to prove that the record:
(1) is generated by an agency covered by the Act; (2) is a minute, order or decision of an agency or an essential component in the agency arriving at its decision; (3) fixes the personal or property rights or duties of any person or group of persons; and (4) is not protected by statute, order of decree of court.
Della Franco v. Department of Labor & Industry, 722 A.2d 776, 777 (Pa.Cmwlth.1999).
[5] Section 305 of the Right-to-Know Law, 65 P.S. § 67.305(a). An agency now has the burden of proving that a record is not a public record. Section 708 of the Right-to-Know Law, 65 P.S. § 67.708(a).
[6] Article I, Section 1, entitled "Inherent rights of mankind," states:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
[7] Article I, Section 8, entitled "Security from searches and seizures," states:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or seize any person or things shall issue without describing them as nearly as may be, nor without probable case, supported by oath or affirmation subscribed to by the affiant.
[8] In addition to Section 3101.1, PSEA notes that the definition of a "public record" under the Right-to-Know Law excludes any record that is exempt from disclosure because of "any other Federal or State law or regulation or judicial order or decree." Section 102 of the Right-to-Know Law, 65 P.S. § 67.102. PSEA argues that decisions of the Pennsylvania Supreme Court holding that there is a right of privacy in one's home address constitute a "judicial order or decree," but it did not cite any case that produced that judicial order.
[9] In Duncan, 572 Pa. at 444, 817 A.2d at 458 (quoting Commonwealth v. Duncan, 752 A.2d 404, 412 (Pa.Super.2000)), the Supreme Court adopted the Superior Court's reasoning that "there is a fundamental difference between the type of information that is subject to a constitutionally protected right to privacy and a person's identification information, i.e., one's name and address."
[10] The 1957 version of the Right-to-Know Law was later amended to make the motive or reasonableness of a request irrelevant. Section 3.1 of the former Right-to-Know Law, formerly 65 P.S. § 66.3-1.
[11] It states:

(1) If a written request for access to a record is denied or deemed denied, the requester may file an appeal with the Office of Open Records or judicial, legislative or other appeals officer designated under section 503(d) within 15 business days of the mailing date of the agency's response or within 15 business days of a deemed denial. The appeal shall state the grounds upon which the requester asserts that the record is a public record, legislative record or financial record and shall address any grounds stated by the agency for delaying or denying the request.
(2) Except as provided in section 503(d), in the case of an appeal of a decision by a Commonwealth agency or local agency, the Office of Open Records shall assign an appeals officer to review the denial.
65 P.S. § 67.1101(a)(1)(2).
[12] It states:

Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a local agency issued under section 1101(b) or of the date a request for access is deemed denied, a requester or local agency may file a petition for review or other document as required by rule of court with the court of common pleas for the county where the local agency is located. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision.
65 P.S. § 67.1302(a).
[13] It provides:

The appeals officer may grant a request under paragraph (1) if:
(i) no hearing has been held;
(ii) the appeals officer has not yet issued its order; and
(iii) the appeals officer believes the information will be probative.
65 P.S. § 67.1101(c)(2).
[14] We are not implying, as Judge McCullough suggests in her dissent, that PSEA lacks standing to challenge requests for names and addresses of public school employees. PSEA's standing is not at issue.
[15] The Office of Open Records could be a proper defendant in some litigation. For example, if it failed to pay its vendors, it could be brought before the Board of Claims for breach of contract.
[16] Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §§ 691.1-691.1001.
[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] 65 P.S. § 67.506(d)(1). Section 506(d)(1) provides: "A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a `governmental function' on behalf of the agency, and which directly relates to the governmental function and is not exempt under this act, shall be considered a public record of the agency for purposes of this act."
[3] 65 P.S. § 67.1101(c).
[4] 65 P.S. § 67.1301. Section 1301 provides:

(a) General rule.Within 30 days of the mailing date of the final determination of the appeals officer relating to a decision of a Commonwealth agency, a legislative agency or a judicial agency issued under section 1101(b) or the date a request for access is deemed denied, a requester or the agency may file a petition for review or other document as might be required by rule of court with the Commonwealth Court. The decision of the court shall contain findings of fact and conclusions of law based upon the evidence as a whole. The decision shall clearly and concisely explain the rationale for the decision. (Emphasis added.)
[5] In further contradiction to PSEA's contention that the RTKL contains a blanket prohibition of the disclosure of home addresses, on the day of final passage of the RTKL after the Senate by a 50-0 margin voted in its favor, Representative Baker made a motion to suspend the House Rules to offer Amendment No. A05698 which, according to him, would have exempted personal addresses, dates of birth, license plate numbers and persons' signatures from disclosure. With regard to home addresses, Representative Baker stated:

Mr. Speaker, the reasons that I am asking for suspension of personal addresses, for consideration of personal addresses to be included in this legislation is that, especially from a crime victim's standpoint, an individual's home address is not included in the list of exceptions, except for those belonging to law enforcement and judges. And the public disclosure of the information would place a victim of domestic violence, as well as a victim of crime, in jeopardy of discovery by the perpetrator. Stalking and domestic violence perpetrators, as well as gangs and organized crime, are known to be relentless in pursuing their victims for reasons that include opportunities for revictimization and pressure to drop charges or refuse to testify.
House Journal, February 6, 2008, page 357.
This motion to suspend so that the amendment prohibiting disclosure of home addresses could be voted on failed. This failure to even vote on Amendment No. A05698 shows the legislative intent not to exempt home addresses from disclosure under the RTKL.
[6] In a prior case, this Court interpreted Duncan, a criminal case, to apply only to other criminal cases. Hartman v. Department of Conservation and Natural Resources, 892 A.2d 897, 905 n. 19 (Pa.Cmwlth.2006) ("Duncan, a criminal case, is not applicable to a civil proceeding arising under the [old] Right-to-Know Law [Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1-66.4, repealed by Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104].") This statement, which is dicta, was clearly in error. The Duncan court examined numerous cases from other jurisdictions that supported its holding that there is no constitutional right to privacy in one's home address. Among them were several civil cases, and our Supreme Court made no distinction, either explicitly in its holding or implicitly in the cases it examined, supporting the claim that civil cases were exempted from its reasoning.
[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] I would emphasize that the harm contemplated by the statute need not be physical, or else the language "or the personal security of" would be superfluous.
[3] See, e.g., Sapp Roofing Co. Inc. v. Sheet Metal Workers' International Association, 552 Pa. 105, 713 A.2d 627 (1998), and Cypress Media, Inc. v. Hazleton Area School District, 708 A.2d 866 (Pa.Cmwlth.1998).
[4] While OOR has authority under section 1310(a)(2) to issue advisory opinions, it did not respond to PSEA's request for four months and then replied that the request was moot because it had already issued a number of decisions concluding that home addresses of employees in the possession of an agency generally are public records subject to disclosure under the RTKL.
[5] The declaratory relief requested in PSEA's petition cannot be granted without the benefit of a factual record and further argument. To the extent this matter raises serious constitutional questions, this is not the appropriate procedural posture in which to finally decide those issues.